UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOHN MEERMAN,

       Plaintiff,                                Case No.  1:15-CV-0626

v.

                                                  HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Michael Meerman seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.

*See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.52, 82.)  He finished the tenth grade and later obtained a GED.  (PageID.83.)  Plaintiff was previously employed as a salvager and laborer, press operator, and shear operator.  (PageID.104–05.)  Plaintiff filed for DIB on February 10, 2012, and SSI on February 14, 2012,

alleging that he had been disabled since October 31, 2006,[1] due to problems associated with asthma, bipolar disorder, ADHD, arthritis, degenerative disc disease, hypertension, obesity, panic attacks, rage attacks, and coughing fits. (PageID.121, 135, 273–85.) Plaintiff's applications were denied on June 29, 2012, after which time he requested a hearing before an ALJ. (PageID.150–58, 163–68.) On November 22, 2013, Plaintiff appeared with his counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.77–112.) In a written decision dated January 29, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.52–76.) On April 9, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.26–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[1] At the hearing, Plaintiff amended his alleged onset date to June 1, 2008. (PageID.80, 296.)

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date. (PageID.57.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) obesity; (2) bipolar disorder; (3) panic disorder; and (4) attention deficit hyperactivity disorder (ADHD). (PageID.57.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.59–61.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ladders, ropes or scaffolds; no work at unprotected heights or with dangerous moving machinery; can understand, remember and perform simple tasks; can make simple work-related judgments; adapt to routine changes in the work place with less than frequent changes in work place expectations; and must have no interaction with the public and less than frequent interaction with co-workers.

4

(PageID.61.) Continuing with the fourth step, the ALJ determined, based on VE testimony, that Plaintiff was able to perform his past work as a salvager and press operator as they were actually and generally performed. (PageID.67, 105.) Having made her determination at step four, the ALJ ended her analysis[3] and concluded that Plaintiff was not disabled at any point from June 1, 2008 through January 29, 2014.  (PageID.68–69.)

## DISCUSSION

Plaintiff's Statement of Errors raises the following claims:

1. The ALJ committed reversible error assigning no weight to a consultative examination because it had been scheduled by Plaintiff's attorney,

2. The ALJ committed reversible error by not properly weighing the medical evidence, especially the opinion of Plaintiff's treating psychiatrist, and

3. The ALJ committed reversible error by failing to properly consider Plaintiff's extreme obesity.

(PageID.891.)  The Court will discuss the issues below.

**1.    The ALJ Did Not Err Regarding Dr. Dennis Mulder.**

On June 25, 2013, Dr. Dennis Mulder, Ed.D., examined Plaintiff at the request of Plaintiff's counsel.  At the conclusion of the examination, Dr. Mulder wrote a letter to Plaintiff's counsel describing Plaintiff's medical history, his observations of Plaintiff, and Plaintiff's diagnoses. Dr. Mulder also gave the following prognosis:

> The potential for the patient becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis

---

[3] Although unnecessary, the ALJ also made an alternative finding at step five of the sequential evaluation that Plaintiff could perform other unskilled work at the medium exertional level in the regional economy (the State of Michigan) and national economy such as custodian (38,000 jobs in Michigan, 1,300,000 national jobs), assembler (24,000 jobs in Michigan, 840,000 national jobs), and dishwasher (8,000 jobs in Michigan, 280,000 national jobs). (PageID.68.)

> is guarded. The combination of his physical distress along with his clinically significant psychological distress greatly interferes with his ability to function at a level necessary for him to obtain and maintain full-time, gainful employment. It is my opinion that the patient meets the Listings at 12.04 and 12.06, and that he has been unable to work on a sustained basis since 2006.

(PageID.850.) After summarizing Dr. Mulder's letter, the ALJ noted that "[t]he mental status evaluation of Dr. Mulder basically indicated the claimant was unable to obtain and maintain full time gainful employment. This opinion was assigned no weight since it was not consistent with the bulk of the treatment records and he performed the evaluation on referral from the claimant's attorney." (PageID.65, 67) (internal citations omitted.) Plaintiff claims the ALJ erred in rejecting the opinion merely because it was given in response to a request from counsel. (PageID.892–83.) The Court disagrees.

The issue that Plaintiff raises in this claim of error does not involve the treating physician rule. The treating physician rule did not apply to the opinions expressed by Dr. Mulder because he was a consultative examiner who did not have a prior treating relationship with Plaintiff. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006). Because Dr. Mulder was not a treating physician, the ALJ was not "under any special obligation to defer to his opinion[s] or to explain why [s]he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). The ALJ is responsible for weighing psychological opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve

conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

There is "nothing fundamentally wrong with a lawyer sending a client to a doctor." *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (per curiam). Courts have recognized that the results of a consultative examination should not be rejected "solely" because it was arranged and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel . . . . The ALJ may not automatically reject the opinion for that reason alone, however."). Some courts have criticized ALJs for referring to opinions like Dr. Mulder's as "purchased opinions," but such statements do not provide a basis for overturning an ALJ's decision. *See, e.g., Mason ex rel. Mason v. Astrue*, No. 10–621–M, 2011 WL 2670005, at *6 (S.D. Ala. July 6, 2011); *Milan v. Comm'r of Soc. Sec.*, No. 09–1065, 2010 WL 1372421, at *10 n.3 (D. N.J. Mar. 31, 2010). Indeed, it was entirely appropriate for the ALJ to note that Dr. Mulder had examined Plaintiff on a referral from Plaintiff's attorney. *See DeVoll v. Comm'r of Soc. Sec.*, No. 99–1450, 2000 WL 1529803, at *1 (6th Cir. Oct. 6, 2000); *Pentecost v. Sec'y of Health & Human Servs.*, No. 89–5014, 1989 WL 96521, at *1 (6th Cir. Aug. 22, 1989); *see also Gilmore v. Astrue*, No. 2:10–54, 2011 WL 2682990, at *8 (M.D. Tenn. July 11, 2011). Here, the ALJ did not reject Dr. Mulder's opinions "solely" on the basis that his one-time examination occurred on a referral from Plaintiff's counsel, rather she also noted it was inconsistent with bulk of the record evidence. (PageID.67.) While such may have been insufficient, on its own, to reject the opinion of a treating physician, it was sufficient here to reject the opinion of a consultative examiner. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376–77 (6th Cir. 2013) The ALJ's decision to give little weight to Dr. Mulder's opinions is

well-supported and entirely consistent with applicable law.  Plaintiff's first claim of error is accordingly rejected.

### 2. The ALJ Did Not Err Regarding Dr. Katherine Jawor.

On June 11, 2013, Dr. Katherine Jawor cosigned a completed form regarding Plaintiff's mental limitations. (PageID.836–38.)  The form consisted of check-box questions and space for the doctor to provide a few words in support of her opinion.  Dr. Jawor opined that Plaintiff was moderately limited regarding his ability to understand, remember, and carry out simple instructions, and was markedly impaired regarding his ability to make judgments on those instructions. (PageID.836.)  Regarding complex instructions, Dr. Jawor found Plaintiff was markedly impaired in his ability to understand, remember, carry out, and make judgments. (PageID.836.)  In support of this opinion, Dr. Jawor noted Plaintiff had ADHD, and that even with medication, Plaintiff was easily distracted and had an impaired memory. (PageID.836.)  Dr. Jawor also concluded Plaintiff was markedly impaired regarding his ability to interact appropriately with the public, supervisors, and coworkers.  He was moderately impaired in his ability to respond appropriately to usual work situations and changes in a routine work setting. (PageID.837.)  In support, Dr. Jawor noted that Plaintiff had a history of panic attacks, and that being in crowded places can bring on such an attack. (PageID.837.)

The ALJ gave Dr. Jawor's opinion only "little weight," noting that the opinion Plaintiff had marked limitations was "simply not consistent with [her] own mental status evaluations and GAF scores. Furthermore, these ratings were not consistent with the claimant's own admissions of feeling much better when he spoke to Dr. Hogue, his current family physician." (PageID.67.)

8

Plaintiff claims the ALJ failed to properly consider this opinion under the treating physician doctrine.[4] The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 375–76 (quoting 20 C.F.R. § 404.1527). It appears undisputed Dr. Jawor qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

---

[4]It is difficult to understand Plaintiff's second claim of error. The argument consists of one large paragraph spanning two pages, and it is not until the second page that Plaintiff makes even a passing mention to the facts of this case. After review, the Court finds that Plaintiff argues the ALJ erred in failing to properly apply the treating physician doctrine to the opinion of Dr. Jawor. To the extent Plaintiff raises other arguments in this claim of error, the Court finds the arguments have been waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

On August 2, 2012, Plaintiff met with Dr. Jawor for a psychiatric evaluation. (PageID.810.) He complained of panic attacks, mood swings, rage attacks, and concentration problems. Plaintiff was described as "pleasant and cooperative." (PageID.811.) Plaintiff was assigned a GAF[5] score of 55, and diagnosed with bipolar disorder, polysubstance dependency in

---

[5] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR), (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.* GAF scores between 55 to 60 lie within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

remission, and a history of ADHD. (PageID.811.) Dr. Jawor prescribed medications and told Plaintiff to continue to see a social worker. (PageID.811.) On November 6, 2012, Plaintiff stated "I'm good." He reported his mood as being 7/10, with 10 being very happy. Plaintiff's ability to deal with anxiety had improved, but he complained of "bad" concentration. (PageID.8324.) Dr. Jawor provided a similar diagnosis as the previous visit and again assigned a GAF of 55. The doctor noted that Plaintiff had refilled his medications earlier than he needed to, and changed his prescriptions. (PageID.834–55.)

Plaintiff continued to treat with Dr. Jawor. On April 23, 2013, he stated that he was "doing better" and that the new medication helped. He stated that he had "learned to remove himself" from situations that would trigger rage or panic attacks. He described his stressors as the health of his grandmother and mother, and problems his nephew had at school. (PageID.832.) Dr. Jawor found Plaintiff to be pleasant and cooperative, assigned Plaintiff an increased GAF score of 56, and continued Plaintiff's medications. (PageID.833.) On July 16, 2013, Dr. Jawor found Plaintiff to be pleasant, cooperative, and to have a brighter mood. Plaintiff was assigned an increased GAF of 60, and his medications were adjusted. (PageID.860–61.)

On October 8, 2013, and December 13, 2013, Dr. Jawor found Plaintiff still had a GAF score of 60. On both occasions Plaintiff appeared pleasant and cooperative with appropriate hygiene. (PageID.863–65.) Plaintiff stated that things were going ok, but had recently had a rage attack and gotten into a fight with his sister as well as a fight at Thanksgiving. Plaintiff's medications were adjusted. (PageID.863–65.) On May 28, 2013, Plaintiff met with Dr. Amy Hogue. Dr. Hogue noted Plaintiff had a history of bipolar disorder. She noted that "[a]ll medications are working really good" and that Dr. Jawor was preparing to discharge Plaintiff. Plaintiff reported a

"good mood," that medications helped, and that this was the "best combination of medications" he had been on. (PageID.839.) Dr. Hogue concluded "[i]t sounds like he is doing really well on his current meds and his affect is congruent with this." (PageID.841.)

The ALJ provided good reasons, supported by substantial evidence, for discounting Dr. Jawor's opinion. As the ALJ noted, and as supported above, treatment notes from Dr. Jawor consistently found that Plaintiff had appropriate grooming and hygiene, and was pleasant and cooperative. He was generally in a good mood and stated his medications were helping. While he had racing thoughts, they were occurring less. The ALJ correctly noted such were inconsistent with the doctor's opinions that Plaintiff was markedly limited.[6] The opinions were also inconsistent with the Plaintiff's own statements, made to Dr. Hogue, that his medications were helping, and Dr. Hogue's conclusion that Plaintiff's affect seemed congruent with the improvement. (PageID.66.) Accordingly, the Court finds the ALJ did not violate the treating physician rule and Plaintiff's claim of error is rejected.[7]

### 3. The ALJ Did Not Violate SSR 02-1P in Discussing Plaintiff's Obesity.

---

[6] The ALJ also found the doctor's opinion to be inconsistent with the GAF scores she assigned. Another court in this district has found purported inconsistencies between GAF scores and a doctor's opinion are not sufficient to constitute "good reasons" for rejecting a physician's opinion. *See Houghton v. Comm'r of Soc. Sec.*, No. 1:15-CV-139, 2016 WL 1156597, at *4 (W.D. Mich. Mar. 24, 2016) (Kent, M.J.) Given the subjective nature of GAF scores, the Court agrees. The Court need not remand on this point, however, as the ALJ provided other "good reasons" for rejecting the opinion.

[7] Plaintiff appears to relatedly argue that the ALJ was required to give more weight to Dr. Jawor over agency physicians, because Dr. Jawor had examined Plaintiff and the agency physicians had not. (PageID.894.) Plaintiff is incorrect. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). The Court finds this is such a circumstance.

Plaintiff contends that the ALJ failed to adequately consider his obesity, stating that the ALJ gave only "lip service" to this impairment, citing SSR 02–1p ("Evaluation of obesity"). (PageID.895.)[8] Although the Commissioner deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. SSR 02–1p provides in pertinent part:

> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02–01p, 2002 WL 34686281 (Sept. 12, 2002).

While SSR 02–1p provides guidance for the ALJ in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

---

[8] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 549) (citations omitted).

> Social Security Ruling 02–01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006); *see also Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015). Here, the ALJ addressed Plaintiff's obesity throughout the decision. At step two, the ALJ noted that Plaintiff's obesity constituted a severe impairment. (PageID.57–58.) At step three, the ALJ noted that she considered Plaintiff's obesity with regard to Listing 1.00Q, referencing Plaintiff's non-severe degenerative disc disease, but concluded that Plaintiff's "obesity in combination with the mild degenerative disc disease would not be greater than might be expected without obesity." (PageID.59.) At step four, the ALJ discussed Plaintiff's obesity and concluded that the record did not show that "the combined effects of the claimant's obesity together with his nonsevere musculoskeletal impairments are greater than might be expected without obesity." (PageID.63.)

In *Shilo v. Commissioner of Social Security*, the Sixth Circuit found that the ALJ had not appropriately considered the plaintiff's obesity related evidence when all the ALJ had done was observe that the plaintiff weighed 436 pounds, listed obesity as a severe impairment, and stated that the plaintiff's "obesity ha[d] been considered in combination with the back condition." *Id.* at 962. The ALJ here did much more than that. For example, the ALJ discussed a March 27, 2012, treatment note from Dr. Jacqueline Koski. At that time Plaintiff was 67 inches tall and weighed 320.6 pounds. The ALJ noted that the treatment note described Plaintiff as having no numbness or tingling in his legs, and he had normal strength and tone in the upper and lower extremities. (PageID.696–97.) The ALJ also discussed a February 5, 2013, treatment note from Dr. Hogue. At

14

that time Plaintiff weighed 324 pounds. (PageID.822.) The note found Plaintiff had a normal gait, and while he had difficulty breathing, there was no difficulty breathing on exertion. The doctor found that Plaintiff did not have any paresthesias, tingling, or weakness in his extremities. (PageID.822.) The ALJ also discussed Plaintiff's daily activities, and noted that Plaintiff did not have any difficulty caring for his personal needs, and could go shopping with his mother. (PageID.60, 360–61.)

The record reflects that the ALJ mentioned Plaintiff's weight and diagnosis of obesity and considered it in combination with Plaintiff's other impairments. The ALJ's explicit discussion of Plaintiff's obesity indicates sufficient consideration of his obesity under the regulations and SSR 02–01p. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010); *Allen v. Colvin*, No.3:10–cv–01024, 2014 WL 1775564 at *21 (M.D. Tenn. April 29, 2014). Accordingly, Plaintiff's claim of error will be denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:     June 29, 2016              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE